# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:13-cr-00596-JO |
| v. | **INDICTMENT** |

**JASON WELD HAGEN,**
    aka "hammertime," aka "Hamer Tyme," aka
    "Hammer Lynel Tyme, P.C.," aka "Jim
    Rxxxxxxx," aka "Jay Haben," aka "Kevin
    Sxxxxxx," aka "Quinn Bxxxx," aka "J-
    MAN," aka "JAY," aka "J-Walker," aka "J";
**CHELSEA LEAH REDER,"**
    aka "Chelsea Raider," aka "Lisa Kozak";
**RICHARD EGAN WEBSTER,**
    aka "rickracer6969," Rik Webstar,"
    aka "Webstar,"and,
**DONALD ROSS BECHEN,**
    aka "drbechen," aka "Donkey,"

18 U.S.C. § 2
18 U.S.C. §§ 1956(a)(1)(A) &(B), (h);
18 U.S.C. §§ 1956(a)(2)(A) & (B);
18 U.S.C. § 982;
21 U.S.C.§§ 841(h)(1)(A), 846;
21 U.S.C. §§ 846, 953(a), 960(a)(1);
21 U.S.C.§§ 841 (a)(1);
21 U.S.C. § 853

\*\* UNDER SEAL\*\*

**Defendants.**

## THE GRAND JURY CHARGES:

### COUNT 1
### CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE VIA THE INTERNET

Beginning on a date unknown, but no later than August 25, 2012, and continuing to on or
about August 4, 2013, in the Western District of Washington, District of Oregon, District of
Montana, District of Maryland, Australia, Canada, Czech Republic, United Kingdom, and
elsewhere, **JASON WELD HAGEN,** aka "hammertime," aka "Hamer Tyme," aka "Hammer
Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin Sxxxxxx," aka "Quinn
Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J"; **CHELSEA LEAH REDER,"** aka
"Chelsea Raider," aka "Lisa Kozak"; **RICHARD EGAN WEBSTER;** aka "rickracer6969,"

Rik Webstar," aka "Webstar,"and **DONALD ROSS BECHEN,** aka "drbechen," aka "Donkey," and others, known and unknown to the Grand Jury, conspired, combined, and agreed with each other, and with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute methamphetamine via the Internet, as set forth below:

## I. INTRODUCTION
## THE CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE VIA THE INTERNET

**The World Wide Web—Internet**.

1.     The Internet is a collection of computers and computer networks that are connected to one another via high-speed data links and telephone lines for the purpose of communicating and sharing data and information.  Connections between Internet computers exist across state and international borders; therefore, information sent between two computers connected to the Internet frequently cross state and international borders even where the two computers are located in the same state.

2.     Email, also known as "electronic mail," is a popular means of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer or user sends email, it is initiated at the user's computer, transmitted to the subscriber's email server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users.

3.     An email server may allow users to post and read messages and to communicate via electronic means.  Many individuals and businesses obtain access to the Internet through businesses known as Internet Service Providers ("ISPs").

4.     ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet email accounts that allow users to

communicate with other Internet users by sending and receiving electronic messages. All the messages through the ISP's servers, remotely store electronic files on their customers' behalf, could provide other services unique to each particular ISP. ISPs maintain records pertaining to the subscriber accounts maintained by them. Those records often include identifying and billing information, account access information in the form of log files, email transaction information, posting information, account application information, and other information both in computer data and written record format.

5. An Internet Protocol address, or "IP" address, is a unique numeric address assigned to computers using the Internet. An IP address looks like a series of numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer using the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be properly directed from its source to its destination. Most ISPs control a range of IP addresses to be assigned to their customers' computers.

## Pretty Good Privacy—PGP—Encryption.

6. PGP is a data encryption and decryption computer program that provides cryptographic privacy and authentication for data communication. PGP is often used for signing, encrypting, and decrypting texts, emails, files, directories, and whole disk partitions and to increase the security of email communications. PGP can be used to send messages confidentially, with the use of public and private symmetric keys, known as session keys, public keys and private keys. Only the private key belonging to the receiver can decrypt the session key. This encryption program was used by the members of this conspiracy to communicate in a confidential manner.

**Indictment** Page 3

**The Onion Router—TOR Anonymizer.**

7.      In September 2002, "The Onion Routing Project" (TOR) was released as a free software
program to improve Internet anonymity. TOR directs Internet traffic through a free,
worldwide, volunteer network consisting of more than four thousand relays to conceal a
user's location or usage from anyone conducting network surveillance or traffic analysis.
TOR is intended to protect the personal privacy of users, as well as their freedom and
ability to conduct confidential business by keeping their Internet activities from being
monitored. TOR allows websites and electronic mail communications to completely
mask IP addresses, thus allowing users to conduct their business without being
monitored. Members of this conspiracy used TOR to ensure online anonymity and
conduct illegal criminal activity.

**The Internet Marketplace "Silk Road".**

8.      In February, 2011, an Internet retail marketplace known as "Silk Road" offered for sale a
variety of illegal items, using alternative payment methods, including the virtual currency
known as "Bitcoins" (BTC) as payment for illegal items. BTC is a virtual currency that
is not regulated and has no central authority or repository.

9.      Silk Road" was an online black market operated as a TOR hidden service such that online
users could browse it anonymously and securely without potential traffic monitoring.
Silk Road was an "underground website." The majority of electronic communications
between the methamphetamine distributors in this conspiracy and customers was on the
Silk Road website via internal private messaging, via the Internet and email, using
confidential messaging encryption programs as described above.

/ / /

10.     The Silk Road site contained a seller's guide and buyer's guide containing extensive

guidance on how to conduct transactions on the site without being caught by law

enforcement. The seller's guide, for instance, instructed vendors to "vacuum seal"

packages containing narcotics in order to avoid detection by canine or electronic sniffers.

The buyer's guidance instructed buyers to use a different address from their own address

to receive shipment of any item ordered through the site, such as a friend's house or post

office box from which the user could then transport the item discreetly to its final

location.

11.     The Silk Road forum likewise contained extensive guidance on how to evade law

enforcement, hosted by users on the site themselves. For example, in a section of the

forum labeled "security," TOR, BTC, cryptography, anonymity, security were posted and

discussed by users offering advice and other means to other users on how they should

configure their computer so as to avoid leaving any trace on their systems of the activity

conducted by them on Silk Road. The Silk Road site contained a protocol for reporting on

how long the seller had been a vendor, how long it had been since the vendor had last

been seen on the site, what the ranking of the seller was, as well as whether there was

positive feedback, and if so, from how many fans and after a listing of numbers of

transactions.

## II. MANNER AND MEANS OF THE CONSPIRACY

Defendants **JASON WELD HAGEN, CHELSEA LEAH REDER, RICHARD EGAN
WEBSTER, DONALD ROSS BECHEN,** and others operated in the following manner and
used the following means to commit the crimes charged in this indictment:

/ / /

1.  Members of the conspiracy used the Internet, facilities operating in interstate commerce such as the U.S. Postal Service, FedEx, United Parcel Service (UPS,) telephones, email, and phone communications to advertise, sell, and distribute methamphetamine in the United States and in foreign countries.

2.  Members of this conspiracy advertised methamphetamine for sale on Silk Road and received BTC as payment for delivery of methamphetamine in the United States and foreign countries.

3.  Members of the conspiracy used the Internet to acquire and use software such as Pretty Good Privacy (PGP,) The Onion Router (TOR,) and Silk Road to distribute methamphetamine.

4.  Members of the conspiracy made materially false representations as part of a scheme to obtain bank accounts in order to conceal their identity while conducting illegal drug trafficking activities.

5.  Members of the conspiracy received BTC as drug sales proceeds which would be converted to U. S. Dollars and delivered to members of the conspiracy by way of Western Union money transfers.

6.  Members of the conspiracy used BTC wallets to receive, store, and transfer BTC virtual currency to others.

7.  Members of the conspiracy used BTC wallets to receive, store, and transfer BTC virtual currency to other currencies, such as U.S. Dollars.

8.  Members of the conspiracy produced false and fictitious government identification documents such as drivers' licenses to conceal the true identity of the conspirators.

**Indictment**                                                                 **Page 6**

9.    Members of the conspiracy used post office boxes to receive mailed items in furtherance of the goals of the conspiracy.

10.   Members of the conspiracy received money by way of Western Union money transfers, money orders and prepaid debit cards.

11.   Members of the conspiracy purchased stamps with cash in order to conceal their identity from commercial carriers.

12.   Members of the conspiracy used bank accounts to facilitate transfer of drug trafficking and money laundering proceeds to members of the conspiracy.

13.   Members of the conspiracy used "Unirush," and "PayPal" debit/transfer accounts and other financial institutions using their debit/transfer account services to facilitate transfer of drug trafficking and money laundering proceeds to members of the conspiracy.

14.   Members of the conspiracy used "Unirush," "PayPal," "Netspend," "accountnow," "Ready Debit," debit cards and "Green Dot MoneyPaks," to facilitate transfer of drug trafficking and money laundering proceeds to members of the conspiracy and other financial institutions.

15.   Members of the conspiracy converted BTC to currency by using "Green Dot Money Paks" "PayPal" accounts, and money transfers to facilitate transfer of drug trafficking and money laundering proceeds to members of the conspiracy and other financial institutions.

### III. OVERT ACTS

1.    On and between August 25, 2012, and continuing to on or about August 4, 2013, the exact dates unknown to the Grand Jury, **JASON WELD HAGEN** ,

**CHELSEA LEAH REDER**," **RICHARD EGAN WEBSTER, DONALD ROSS BECHEN,** members of the conspiracy, conspired, combined, and agreed with each other, and with others, known and unknown to the Grand Jury, in the District of Oregon, and elsewhere, to sell methamphetamine via the Internet and did deliver over 17 pounds of methamphetamine to others on approximately 3,169 occasions, for a total of $607,220.51 in methamphetamine drug trafficking sales.

2.      On or about August 25, 2012, at a location unknown to the Grand Jury, **JASON WELD HAGEN** received a false and fictitious Oregon driver's license with the semblance of **JASON WELD HAGEN** in the name Kevin Sxxxxxx.

3.      On and between August 25, 2012, and August 3, 2013, at a location unknown to the Grand Jury, **JASON WELD HAGEN** opened PayPal account number xxxxxx7737, in the name Quinn Bxxxx, used email addresses "goodparadocs@xxxxx.com," and "31know@xxxxx.com," and received the sum of approximately $22,093.00 in money transfers into this account.

4.      On and between August 25, 2012, and August 3, 2013, at a location unknown to the Grand Jury, **JASON WELD HAGEN** used the PayPal account number xxxxxx7737, in the name Quinn Bxxxx to transfer money into the Chase Bank account of **JASON WELD HAGEN**, account number xxxxxx4543, in the sum of $22,093.00.

5.      On and between November 21, 2012, and continuing until at least August 4, 2013, a member or members of the conspiracy using the screen name "hammertime," advertised methamphetamine for sale on the Internet site Silk Road.

/ / /

6.  On or about December 3, 2012, a member of the conspiracy delivered approximately 3.5 grams of methamphetamine to an undercover government agent in Maryland for 22.74 BTC.

7.  On or about January 14, 2013, a member of the conspiracy delivered approximately 14 grams of methamphetamine to an undercover government agent in Maryland in exchange for 74.49 BTC.

8.  On and between March 1, 2013, and July 14, 2013, a member of the conspiracy used the Internet to transfer over $116,000 to **JASON WELD HAGEN** by way of Green Dot MoneyPak reloadable debit cards.

9.  On or about March 13, 2013, at an address on SW Butner Road, Portland, Oregon, **DONALD ROSS BECHEN** possessed a computer, printer, and identification manufacturing equipment used in producing false and fictitious identification for use by others in conducting drug trafficking, money laundering, and identity theft activities.

10. On or about June 3, 2013, at an unknown location, a member or members of the conspiracy prepared Express Mail mailing labels with a false sender's address as "Megan Cxxxxx, 3xxxx SW Town Center Loop West, Wilsonville, OR 97070."

11. On or about June 3, 2013, at an unknown location, a member or members of the conspiracy placed charcoal substances and Mylar metallic sheeting into an Express Mail package addressed to and destined for John Hxxxx, Los Angeles, CA 90039.

12. On June 3, 2013, **JASON WELD HAGEN** delivered eleven Express Mail packages into the U.S. mail system at the drive-up blue metal collection boxes

outside of the Vancouver, Washington Post Office located at 2700 Caples Avenue, Vancouver, Washington, such packages contained mailing labels with a false and fictitious sender's address as "Megan Cxxxxx, 3xxxx SW Town Center Loop West, Wilsonville, OR 97070."

13.    On June 3, 2013, at the Vancouver, Washington Post Office located at 2700 Caples Avenue, Vancouver, Washington, **JASON WELD HAGEN** attempted to deliver an Express Mail package containing methamphetamine into the U.S. mail which was destined for John Hxxxx, Los Angeles, CA 90039.

14.    On June 4, 2013, **JASON WELD HAGEN** using the screen name "hammertime," advertised methamphetamine for sale on the Internet site Silk Road and solicited customers from his Silk Road website, by writing the following: "I look forward to providing quick and excellent service to my buyers and helping make this website in (sic) an credible and reliable resource."

15.    On June 4, 2013, **JASON WELD HAGEN,** using the screen name "hammertime," advertised methamphetamine for sale on the Internet site Silk Road and offered for sale the following on the Silk Road website:

        a.  1.75 g/High Quality Crystal Meth/Rapid Ship     1.21 BTC

        b.  1/2 g/High Quality Crystal Meth/Rapid Ship      .5 BTC

        c.  1 g/High Quality Crystal Meth/Rapid Shipping    .81 BTC

        d.  3.5 g/High Quality Crystal Meth/Rapid Shipping   2.13 BTC

16.    On or about July 11, 2013, at an unknown location, a member or members of the conspiracy placed charcoal substances, methamphetamine, and metallic Mylar sheeting into Express Mail packages addressed to and destined for:

a. D. C., Christine Downs, SO, Australia 5164

b. C. C., Melbourne, Victoria, Australia, 3000

c. C. L., The Basin, Victoria, Australia 3154

d. J. B., Rowville, Victoryia (sic), Australia.

17. On July 11, 2013, in the District of Oregon and elsewhere, **JASON WELD HAGEN** and **CHELSEA LEAH REDER**, members of the conspiracy, attempted to export four parcels of methamphetamine to Australia, by delivering international parcels into the U.S. mail system at the U.S. Post Office located at 2700 Caples Avenue, Vancouver, Washington, each parcel, was seized in Oregon and containing approximately one ounce of methamphetamine, addressed to the following:

a. D. C., Christine Downs, SO, Australia 5164

b. C. C., Melbourne, Victoria, Australia, 3000

c. C. L., The Basin, Victoria, Australia 3154

d. J. B., Rowville, Victoryia (sic), Australia.

18. On July 11, 2013, in Vancouver, Western District of Washington**, CHELSEA LEAH REDER,** delivered approximately ten Express Mail packages into the U.S. mail system at a blue metal collection box located at 6th Avenue and Main Street, Vancouver, Washington, such packages contained mailing labels with a false and fictitious sender's address of "N. G." Bertha Blvd, Portland, Oregon."

19. On July 11, 2013, in Vancouver, Western District of Washington, **CHELSEA LEAH REDER**, mailed a parcel containing 3.5 grams of methamphetamine to an undercover government agent in Maryland with a false and fictitious sender's

address of "N. G." Bertha Blvd, Portland, Oregon."

20.     On and between August 25, 2012 and August 3, 2013, the exact dates unknown to the Grand Jury, **RICHARD EGAN WEBSTER, DONALD ROSS BECHEN,** and others, known and unknown to the Grand Jury, in the District of Oregon, and elsewhere, provided **JASON WELD HAGEN, CHELSEA LEAH REDER,** and others, methamphetamine which was then delivered to customers purchasing methamphetamine.

21.     On or about September 16, 2013, at a Hilton Garden Inn located in Beaverton, in the District of Oregon, **RICHARD EGAN WEBSTER,** and others possessed approximately 25.4 grams of methamphetamine, a computer, and a "LG" cellular phone in connection with their methamphetamine distribution activity.

22.     On or about September 17, 2013, at Aloha, Oregon, RICHARD EGAN WEBSTER, and others possessed a quantity of methamphetamine, packaging material, scales, identification manufacturing equipment, a stun gun, an orange truck tool box manufactured by "Rigid" displaying the letters "ric's" which contained stun gun knuckles, a firearm and ammunition, in connection with their methamphetamine distribution activity;

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(h)(1)(A) and 846.

It is further alleged that the amount of methamphetamine involved was 500 grams or more of mixture or substance containing methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(l) and 841(b)(l)(A)(viii).

## COUNT 2
## CONSPIRACY TO EXPORT A CONTROLLED SUBSTANCE

The allegations of Count 1 of this Indictment are realleged and incorporated herein as if fully set forth.

On and between August 25, 2012 and July 29, 2013, the exact dates to the Grand Jury unknown, in the Western District of Washington, District of Oregon, and elsewhere, **JASON WELD HAGEN,** aka "hammertime," aka "Hamer Tyme," aka "Hammer Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin Sxxxxxx," aka "Quinn Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" and **CHELSEA LEAH REDER,"** aka "Chelsea Raider," aka "Lisa Kozak" conspired, combined, and agreed with each other, and with others, known and unknown to the Grand Jury, to knowingly and intentionally export methamphetamine, a Schedule II controlled substance, to countries outside the United States, to wit: Australia, Canada, Czech Republic, Italy, and the United Kingdom; all in violation of Title 21, United States Code, Sections 846, 953(a), and 960(a)(1).

It is further alleged that the amount of methamphetamine involved was 50 grams or more of actual methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 960(b)(2)(H).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT 3
## POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE

On or about September 16, 2013, at a Hilton Garden Inn hotel, Beaverton, Oregon, and on or about September 17, 2013, at a residence on SW 175th Avenue, Aloha, in the District of Oregon, **RICHARD EGAN WEBSTER**, aka "rickracer6969," and "Rik Webstar," defendant herein, knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance, all in violation of Title 18, United States Code, Section 2 and Title 21, United States Code, Section 841(a)(l).

It is further alleged that the amount of methamphetamine involved in this offense was five grams or more of actual methamphetamine, all in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(B)(viii).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT 4
## CONSPIRACY TO COMMIT MONEY LAUNDERING

Beginning on a date unknown, but no later than August 25, 2012, and continuing to on or about August 5, 2013, in the District of Oregon and elsewhere, **JASON WELD HAGEN** , aka "hammertime," aka "Hamer Tyme," aka "Hammer Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin Sxxxxxx," aka "Quinn Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" and **CHELSEA LEAH REDER**," aka "Chelsea Raider," aka "Lisa Kozak" knowingly and intentionally combined, conspired, and agreed with each other and with persons whose identities are known and unknown to the Grand Jury to commit the following offenses against the United States in violation of Title 18, United States Code, Section 1956(h):

(a)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved proceeds of specified unlawful activity: distribution of the controlled substance methamphetamine, possession with intent to distribute the controlled substance methamphetamine, and conspiracy to distribute and to possess with intent to distribute the controlled substance methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846; with the intent to promote the carrying on of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved proceeds of the specified unlawful activity of: distribution of the controlled substance methamphetamine, possession with intent to distribute the controlled substance methamphetamine, and conspiracy to distribute and to possess with

**Indictment**                                                                                                    **Page 15**

intent to distribute the controlled substance methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846; knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c)     to transport, transmit, and transfer, and to attempt to transport, transmit and transfer, a monetary instrument and funds to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity: distribution of the controlled substance methamphetamine, possession with intent to distribute the controlled substance methamphetamine, and conspiracy to distribute and to possess with intent to distribute the controlled substance methamphetamine in violation of Title 21, United States Code, Sections 841 and 846; in violation of Title 18, United States Code, Section 1956(a)(2)(A);

(d)     to transport, transmit, and transfer, and to attempt to transport, transmit and transfer, a monetary instrument and funds to a place in the United States from or through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation represented the proceeds of some form of unlawful activity and knowing that such transportation was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity: distribution of the controlled substance methamphetamine, possession with intent to distribute the controlled substance methamphetamine, and conspiracy to distribute and to possess with intent to distribute the controlled substance methamphetamine, in violation of Title 21, United States Code, Sections

**Indictment**                                                                                          **Page 16**

841 and 846; in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 5-9**
**INTERNATIONAL PROMOTION MONEY LAUNDERING**

On or about the dates set forth below, in the District of Oregon and elsewhere,

defendant **JASON WELD HAGEN ,** aka "hammertime," aka "Hamer Tyme," aka

"Hammer Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin

Sxxxxxx," aka "Quinn Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" and

others known and unknown to the Grand Jury, transported, transmitted, transferred and

attempted to transport, transmit and transfer monetary instruments and funds from a place

outside the United States to and through a place in the United States, the District of

Oregon, with the intent to promote the carrying on of a specified unlawful activity:

distribution of the controlled substance methamphetamine, possession with intent to

distribute the controlled substance methamphetamine, and conspiracy to distribute and to

possess with intent to distribute the controlled substance methamphetamine, in violation

of Title 21, United States Code, Sections 841 and 846.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Indictment**                                                                                                    **Page 17**

| Count | Transaction date | Defendant | Financial Transaction |
|-------|-----------------|-----------|----------------------|
| 5 | April 5, 2013 | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 1030 SW Jefferson Street, Portland, Oregon |
| 6 | April 10, 2013 at 10:26pm | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 100 NW 20th Place, Portland, Oregon |
| 7 | May 1, 2013 | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 14555 SW Teal Blvd, Beaverton, Oregon |
| 8 | May 25, 2013 | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 6194 SW Murray Blvd, Beaverton, Oregon |
| 9 | May 30, 2013 at 5:40pm | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 418 SW 2nd Ave, Portland, Oregon |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNTS 10-13
## INTERNATIONAL CONCEALMENT MONEY LAUNDERING

On or about the dates set forth below, in the District of Oregon and elsewhere,

defendant **JASON WELD HAGEN,** aka "hammertime," aka "Hamer Tyme," aka

"Hammer Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin

Sxxxxxx," aka "Quinn Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" and

others known and unknown to the Grand Jury, transported, transmitted, transferred and

attempted to transport, transmit and transfer monetary instruments and funds from a place

outside the United States to and through a place in the United States, the District of

Oregon, knowing that the monetary instruments and funds involved in the transportation

represented the proceeds of some form of unlawful activity and knowing that such

transportation was designed in whole and in part to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of specified unlawful activity:

distribution of the controlled substance methamphetamine, possession with intent to

**Indictment**

distribute the controlled substance methamphetamine, and conspiracy to distribute and to

possess with intent to distribute the controlled substance methamphetamine, in violation

of Title 21, United States Code, Sections 841 and 846.

| Count | Transaction date | Defendant | Financial Transaction |
|-------|------------------|-----------|------------------------|
| 10 | April 4, 2013 | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 1030 SW Jefferson Street, Portland, Oregon |
| 11 | April 10, 2013 at 9:35pm | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 418 SW 2nd Avenue, Portland, Oregon |
| 12 | May 6, 2013 | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 11919 N. Jantzen Drive, Portland, Oregon |
| 13 | May 30, 2013 at 5:50pm | Jason Hagen | One $2,500.00 Western Union wire, from and through Cambodia, concluded at 418 SW 2nd Ave, Portland, Oregon |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

## COUNT 14
## DOMESTIC CONCEALMENT MONEY LAUNDERING

On or about March 17, 2013, in the District of Oregon and elsewhere, defendant

**JASON WELD HAGEN,** aka "hammertime," aka "Hamer Tyme," aka "Hammer Lynel

Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin Sxxxxxx," aka "Quinn

Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" knowingly conducted and

attempted to conduct a financial transaction affecting interstate and foreign commerce,

that is, withdrawing $203.00 from a NetSpend account ending in 3903 in the name of Jay

Haben at an ATM located at 1030 SW Jefferson Street, Portland, Oregon, which involved

proceeds of specified unlawful activity: distribution of the controlled substance

methamphetamine, possession with intent to distribute the controlled substance

methamphetamine, and conspiracy to distribute and to possess with intent to distribute

**Indictment** Page 19

the controlled substance methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846; knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNTS 15-19
### DOMESTIC PROMOTION MONEY LAUNDERING

On or about the dates set forth below, in the District of Oregon and elsewhere, defendant **JASON WELD HAGEN,** aka "hammertime," aka "Hamer Tyme," aka "Hammer Lynel Tyme, P.C." aka "Jim Rxxxxxxx," aka "Jay Haben," aka "Kevin Sxxxxxx," aka "Quinn Bxxxx," aka "J-MAN," aka "JAY," aka "J-Walker," aka "J" knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce, which involved proceeds of specified unlawful activity: distribution of the controlled substance methamphetamine, possession with intent to distribute the controlled substance methamphetamine, and conspiracy to distribute and to possess with intent to distribute the controlled substance methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846; with the intent to promote the carrying on of specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

/ / /

/ / /

/ / /

/ / /

| Count | Transaction date | Defendant | Financial Transaction |
|-------|-----------------|-----------|----------------------|
| 15 | February 21, 2013 | Jason Hagen | Made a $57.24 Check Card purchase from a JP Morgan Chase account ending in 4543 in the name of Jason Hagen at Motel 6 in Portland, Oregon |
| 16 | March 12, 2013 | Jason Hagen | Made a $167.60 Check Card purchase from a JP Morgan Chase bank account ending in 4543 in the name of Jason Hagen at Embassy Suites in Portland, Oregon |
| 17 | June 15, 2013 | Jason Hagen | Made a $520.77 purchase from an AccountNow prepaid debit card at Homewood Suites in Beaverton, Oregon |
| 18 | June 16, 2013 | Jason Hagen | Made a $50.98 puchase from an AccountNow prepaid debit card at Homewood Suites in Beaverton, Oregon |
| 19 | July 8, 2013 | Jason Hagen | Made a $93.89 purchase at Days Inn located at 9930 N.Whitaker, Portland, Oregon |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), 2.

## FORFEITURE ALLEGATION AS TO DRUG CONSPIRACY COUNT 1

Upon conviction of the offense alleged in Count 1 of this Indictment, defendants **JASON**

**WELD HAGEN, CHELSEA LEAH REDER, RICHARD EGAN WEBSTER** and **DONALD**

**ROSS BECHEN** shall forfeit to the United States pursuant to Title 21, United States Code,

Section 853, any property constituting or derived from any proceeds obtained directly or

indirectly as a result of the said violation and any property used or intended to be used in any

manner or part to commit or to facilitate the commission of the said violation, including, but not

limited to:

1. MONEY JUDGMENT

A sum of money equal to the amount of proceeds obtained as a result of the offense of

Conspiracy to Distribute Methamphetamine Via the Internet.

2. CURRENCY

(a) Approximately 108.485 Bitcoins seized on December 5, 2013.

**Indictment**

(b) Approximately $2,000.00 in U.S. currency seized August 22, 2013.

## FORFEITURE ALLEGATION AS TO COUNT 2

Upon conviction of the offense alleged in Count 2 of this Indictment, defendants **JASON WELD HAGEN** and **CHELSEA LEAH REDER** shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any property constituting or derived from any proceeds obtained directly or indirectly as a result of the violation and any property used or intended to be used in any manner or part to commit or to facilitate the commission of the said violation.

## FORFEITURE ALLEGATION AS TO COUNT 3

Upon conviction of the offense alleged in Count 3 of this Indictment, defendant **RICHARD EGAN WEBSTER** shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any property constituting or derived from any proceeds obtained directly or indirectly as a result of the said violation and any property used or intended to be used in any manner or part to commit or to facilitate the commission of the said violation, including, but not limited to:

1. MONEY JUDGMENT

A sum of money equal to the amount of proceeds obtained as a result of the offense; and

2. CURRENCY

Approximately $2,332.00 seized on September 16, 2013.

## FORFEITURE ALLEGATION AS TO COUNT 4

Upon conviction of the offense alleged in Count 4 of this Indictment, defendants **JASON WELD HAGEN** and **CHELSEA LEAH REDER** shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the

**Indictment**                                                                                          **Page 22**

money laundering offense and all property traceable to such property, and all property, real and personal that constitutes or was derived from proceeds of the offense, including but not limited to the following:

1. MONEY JUDGMENT

A sum of money representing the amount of proceeds obtained as a result of the offense of Conspiracy to Commit Money Laundering.

## FORFEITURE ALLEGATION AS TO MONEY LAUNDERING COUNTS 5-19

Upon conviction of one or more offense alleged in Counts 5-19 of this Indictment, defendant **JASON WELD HAGEN** shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the money laundering offenses of conviction and all property traceable to such property, and all property, real and personal that constitutes or was derived from proceeds of the offenses.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without

difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any

**Indictment** **Page 23**

other property of said defendants up to the value of the forfeitable property described above including but not limited to:

(f) REAL PROPERTY: All that lot or parcel of land,together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 16203 NE 36th Avenue, Ridgefield, Washington 98642, in Clark County, more particularly described as: Lot 14, Mount Vista 10-A, According to the Plat thereof, Recorded in Volume H of Plats, Page 041, Records of Clark County, Washington, tax parcel account number 117890-766.

Dated this __10__ day of December 2013.

A TRUE BILL.

OFFICIATING FOREPERSON

Presented by:

S. AMANDA MARSHALL
United States Attorney
District of Oregon

JOHNATHAN S. HAUB, OSB #761651
Assistant United States Attorney

ANNEMARIE SGARLATA, OSB #065061
Assistant United States Attorney

**Indictment**

**Page 24**